Seney, J.
The petition alleges in substance the following facts :
That the plaintiff is engaged in business in the City of Findlay, and as such is now furnishing, and for more than two years past has been furnishing electric light to the city and the *456 inhabitants thereof, under and by virtue of certain contracts made between said plaintiff and said city by the council thereof.
That the City of Findlay is a municipal corporation;, that the Board of Gas Works Trustees consists of five members, elected by the electors of said city; that about the year 1886 the City of Findlay established and constructed a natural gas plant, and ever since said time has maintained and operated the plant.
That prior to the month of July, 1888, the said city desiring to light its streets, etc., with electricity, invited proposals from various electric light companies for prices and terms of franchise; among the parties so submitting proposals were the Thompson-Huston Electric Light Company, to whom it was represented that the city could and would furnish natural gas to an electric light plant, for the generation of electricity, at a cost of from $150 to $200 per year; that upon the faith of such representation the said Electric Company proposed to furnish to the city arc lamps of 2000 candle power, at $60.00 per year per light, for a period of five years; but in said proposition it was specified and made a condition that said price so proposed, was based upon the price of natural gas, as fixed and furnished by the city; and that if .said company was required to pay a higher price for fuel, the price so proposed per arc light, should be increased in proportion to the increased price of fuel; that the council accepted the proposition so made, and on the 9th day of July, 1888, passed an ordinance granting to said company and assigns, the right to construct and maintain an electric light plant, and to furnish to the city and people electric lights upon the terms and prices so proposed; that said Electric Light Company sold and transferred to plaintiff said contract; that plaintiff, before making any expenditures, made and entered into a contract with said city, whereby, in consideration of the low price of said electric light, it promised and agreed to furnish natural gas to plaintiff for operating his plant at the price of $20.00 per month; that for over two *457 years plaintiff has, monthly, promptly paid to defendants the agreed price of and for tbe gas furnished plaintiff by defendants, and for over two years has faithfully, honestly, and in good faith, furnished the defendants and the citizens of said city electric light at the agreed price specified in said ordinance ; that, notwithstanding the premises, the defendants, on or about December 1, 1890, raised the price of said gas from $240 to $2,150 per year, and notified plaintiff that if he did not pay defendants such increased price in full to January 1, 1891, they would, on December 31,. 1890, shut off the gas from plaintiff’s said works; that plaintiff is now furnishing, under his said contract, about 126 arc lamps and lights to the city, for lighting the streets, and about 250 incandescent lights for lighting the public buildings of the city, and about 110 arc lights to private persons for lighting stores, etc., etc.; that if defendants are permitted to cut off said gas as threatened by them, plaintiff would sustain great and irremediable loss, harm and damage, for which he would have no adequate remedy at law.
Plaintiff prays for an injunction to prevent defendants from shutting off said gas from plaintiff’s said plant.
To this petition the city is in default for an answer.
The Board of Gas Trustees files a lengthy answer, but ■ in our judgment not' an averment is contained in the answer that constitutes a defense; but we notice it, in part.
That it denies it contracted with or obligated itself to furnish gas to plaintiff for any length of time, or at any price. (The plaintiff avers the contract was made with the council.)
That the board derives all its authority from a special act of the legislature, and the general laws of the state j that the natural gas plant costs a large sum of money;,that the city is in debt for it, and that under the rates established by a former board the city will never be able to pay the debt, etc., etc. This is in effect an averment of the answer. What of it? What difference does it make, if the city council made the contract alleged in the petition ?
*458 That the proposition of the plaintiff, and the parties under whom he claims to furnish electric lights to the city, and all negotiations on the subject were embraced in an ordinance, and a copy of the ordinance in its acceptance by the Thompson-Huston Electic Company is given.
(This is simply a repetition of the allegations of the petition.)
That the factories of the city, including plaintiff, use nine-tenths of the gas, and do not pay more than one-tenth of the revenue; that some of the gas wells were abandoned as useless — and the city was compelled to drill new wells. (Again, we say, what of it? — if the contract was made.)
That the defendants deny that they or any of them ever made any contract with the plaintiff, or for its benefit. (Probably® about all the Board of Gas Trustees can answer are its own acts — and let the city take care of itself.)
That the natural gas plant is real property; that no memorandum in writing of the pretended contract was set up in the petition or was ever made by the defendants, or any of them, or .signed by them or by their authority. (Again, we say, what of it ? — if the contract was entered into as alleged in the petition.)
Defendants further aver that, the pretended contract in the petition was, if of any force or validity, personal between the parties thereto (there can be no doubt of this); the pleader then draws this conclusion from this averment, viz : “ and the same neither binds the present Board of Trustees, nor said city; ” — (this conclusion amounts to nothing.)
As a wind-up, seven different reasons are assigned embracing the same matter pleaded, why the injunction ought to be dissolved. If the matter pleaded, as we have seen, constitutes no defense — calling it reasons would not improve it.
The reply consists of denials of these immaterial averments.
• So that the case, so far as the pleadings are concerned, stands upon the averments of the petition alone. We have heard the case upon these pleadings and the evidence. The *459 evidence introduced supplies or makes clearer some of the averments of the petition. So the question is: What relief, if any, is the plaintiff entitled to ?
First, as to the averments of the petition. [It pleads two different contracts.
First — The Thompson-Huston Electric Company, at the invitation of the city council, invited propositions for lighting the city with electricity; acting upon this invitation, this company proposed to the city council to furnish to the city arc lamps of 2,000 candle power, at $60.00 per year per light, for a period of five years — but in said proposition it was specified, and made a condition, that said price, so proposed, was based upon the price of natural gas, as fixed and furnished by the city; and that if said company was required to pay a higher price for fuel, the price so proposed per arc light, should be increased in proportion to the increased price of fuel.
That the council accepted the proposition, and passed an ordinance, granting to said company and assigns the right to construct and maintain an electric light plant, and to furnish to the city and people electric lights, upon the terms and prices proposed.
It will be noticed that this contract — if it is one — has only reference to the arc lights furnished the city, and the gas necessary to be used for that purpose.
The second contract pleaded is, that plaintiff, before making any expenditure, made and entered into a contract with defendant, whereby, in consideration of the low price of said electric light, the city promised and agreed to furnish natural gas to plaintiff for operating his plant at the price of $20.00, per month. ■
This second contract is a special contract, fixing the price of gas, and as decided in the Bellaire Goblet Works case,* is void and of no effect.
*460 So, the first contract pleaded is the only one by which the plaintiff can claim any relief.
The petition further shows that plaintiff is furnishing 126 arc lamps and lights to the city. These are the only lights that are within the terms of the first contract pleaded. The petition further shows that the plaintiff is using gas fuel belonging to the city, for furnishing 250 incandescent lights, and'about 110 arc lights to private persons, without any valid contract. The use of this fuel is governed by section 2489, of the Revised Statutes ; so we'have fuel furnished, governed by the first contract pleaded, and in addition, fuel furnished by virtue of section 2489, to this combination; is the price that was fixed on December 1, 1890, by the defendants as pleaded applicable.
The raised price, of gas as fixed on December 1, 1890, was so fixed and raised by the defendants, as averred in plaintiff's petition — the defendants are the City of Findlay and the Board of Gas Trustees' of the gas works of Findlay; as we have held in the Bellaire Goblet Works case; the power to fix the price of gas is governed by section 2489, of the Revised Statutes, viz: Council establishes the rules and regulations ; under these rules and regulations thus established, the Board of Trustees fix the price. In the absence of a showing to the contrary, we are bound to presume that these different boards, in thus fixing the price on December 1, 1890, legally fixed the price, viz :
That the council adopted such rules and regulations, and the manner of using gas, as was uniform, applying to all the inhabitants alike, under similar conditions, and that under these rules and regulations the Board of Gas Trustees fixed the price uniform to all the inhabitants under similar conditions — as we have said, we are bound to presume that the price was thus fixed, in the absence of a showing to the contrary — and so far as the averments of the petition are concerned, there is no such showing, unless the proposition submitted to the council by the Electric Light Company, *461 and accepted by council, constitutes such a showing. If we concede that this proposition, and its acceptance, and passing an ordinance in conformity to its terms, makes a valid contract, and further, conceding that the price of gas at the time was fixed at $200.00 per year, do these furnish the necessary averments ?
The proposition pleaded, as we have seen, only compels the city to furnish gas fuel at the rates thus fixed for the arc lights furnished the city — nothing else.. So that the 250 incandescent lights and 110 arc lights furnished private persons, as pleaded by plaintiff, have no reference to, and are not within the terms of the contract, so that the gas fuel furnished for the 250 incandescent lights and 110 arc lights to private persons, is governed by the rates fixed under section 2489 of the Revised Statutes.
We are again bound to presume that the increased rate of December, 1890, -was not for any gas fuel for the arc lights furnished the city, but was for the incandescent lights and arc lights furnished private persons — otherwise we would have to hold that the city is violating a legal contract, and disregarding the law as provided by section 2489 of the Revised Statutes.
So that, under the averments of the plaintiff’s petition, he is not entitled to any relief — for the reason that the petition does not contain facts sufficient. However, if in fact the rate of December, 1890, was not fixed by the Gas Trustees, under the rules and regulations of council or the rates were fixed by the Gas Trustees, regardless of the rules and regulations of council, or the rates were fixed by the Gas Trustees without any rules or regulations of council; and the council by its acts have not approved oí ratified the rates thus fixed, the presumption before stated would not arise, and would present an entirely different case. Notwithstanding, in our judgment, the petition does not state a cause of action; we have heard the case upon the evidence without objection, and from that evidence we are satisfied — in fact, it is undisputed *462 that the rate of December, 1890, was fixed by the Gas Trustees aloné, regardless of any rules or regulations of council, and without council’s approval or ratification; and regardless of the contract made with plaintiff with reference to the arc lights furnished the city; and for this reason we wi 1 permit the petition to be amended in this respect. With this amendment how stands the case?
On June 25, 1888, the Thompson — Huston Electric Company submitted to the council the following proposition :
“ Findlay, O., June 25, 1888.
“ To the Honorable Gity Council of the Gity of Findlay, Ohio :
“Gentlemen: We, the Thompson Electric Company, of Chicago, 111., our associates or assigns, hereby submit to your Honorable body the following proposition, to-wit :
“We will furnish your city arc lamps of 2,000 candle power • each, to burn all night, for the sum of $60.00 per year per light; provided the number of lights taken are not less than seventy-five. All lamps in excess of seventy-five to be at the 'same rate, unless there should be more than one hundred; we will then furnish them at $55 per year per light. This agreement is for a period of five years from the notice of acceptance thereof.
“ The above prices are based upon the price of natural gas for fuel; should we be obliged to substitute coal for fuel, the price of lights to be in proportion to the increased cost of fuel.
“ The maximum prices for commercial lighting to be on the basis of six dollars per month for arc light. Eight incandescent lights of 20 candle power to be equal to one arc.
“ Five 32 c. p. to one arc.
“Three 65 c. p. to one arc.3
“One 125 c. p. to one arc.
“ The street lights to be located by the council, and to be in operation on or before October 1, 1888.
“ Respectfully submitted,
“The Thompson-Huston Electric Co.
“By F. A. Stafford, Agt.”
*463 This proposition was referred by council to one of its committees, which, among other things, reported :
“ The offer made by the Thompson-Huston Company is perhaps the cheapest and best offer that has been made for lighting any town or city in this part of the state, or elsewhere, so far as we know. But, as it is made with reference to our gas supply, it is probably as high proportionally as the bids for other towns. We think the city is entitled to the advantage gained by cheap fuel in this case.”
This report was adopted by council.
At a session of council, held on July 5, 1888, the following resolution was adopted:
“ Be it resolved, that the council accept the proposition of the Thompson-Huston Electric Light Company, made to this council on June 25, 1888, with the following amendment: ‘ That the Thompson-Huston Electric Light Company be allowed |60.00 per light per year for all lights over one hundred lights, and that all poles on Main street be painted, and that the city reserves the right to use all poles for police or fire alarm purposes; and that the city solicitor, and mayor, and president of the council, be authorized to make contract and draw all necessary papers, and when the contracts are made they shall be signed by the mayor and clerk, on behalf of the city/ ”
This resolution was adopted by the council.
Afterwards the council duly passed an ordinance embracing said proposition and amendment, excepting therefrom any reference to any rate that the Electric Light Company should be furnished gas fuel.
This ordinance was duly accepted by the Electric Light Company.
Although the pleadings do not put in issue any question but what the ordinance was drawn in conformity to the proposition submitted to the council, which would include within the ordinance the rate to be charged for gas fuel, the ordi *464 nance itself shows it was not included. However, we notice it the same as if it was an issue in the case.
It must be borne in mind that the resolutions adopted by council accepted the proposition of the Electric Light Company, and that proposition, so far as furnishing are lights to the city were concerned, was based upon the gas rates for fuel then existing.
The resolutions adopted by the council required the officers of the corporation, in conformity to the proposition, to prepare all contracts that-were necessary to carry out the proposition. Under this resolution all that was done was the passage of the ordinance, which had no reference to gas rates. If, as counsel urge in argument, it is necessary that the ordinance should provide for the gas fuel, it was and is the duty of council to pass such an ordinance. But is it necessary ?
Section 1693 of the Revised Statutes provides “ that no contract, agreement or obligation shall be entered into except by an ordinance or resolution of the council.”
By this it will be seen that the proposition of the Electric Light Company, when accepted by a resolution of council, is just as valid and binding upon the corporation as if the proposition was incorporated in an ordinance. So we hold that the terms of this contract are to be determined by the resolutions of council in connection with' the ordinance. We have already held, in the Bellaire Goblet Works case, that there is no authority in law for the council or the Board of Gas Trustees to fix the rates of gas by special contract. Docs the contract before us attempt to fix the rate of gas? We think not.
The consideration for the proposition to furnish arc light at $60.00 per light was based upon the city furnishing gas for fuel at a certain 'price. If the city failed to furnish the gas fuel, the arc light would cost the city that much more.
The city, by furnishing the fuel, derived a benefit by so doing. The contract in legal effect is the same as a contract on the part of the Electric Light Company to furnish arc lights at so much, and the city to furnish the fuel. Or a contract on *465 the part of the Electric Light Company, to furnish arc lights at so much — the city to furnish the fuel at a certain price. By this contract all the inhabitants of the city derive the same benefit; by a special contract, fixing the price of gas, the purchaser derives the benefit to the detriment of the balance of the inhabitants of the city.
On January 7, 1889, the plaintiff, Foster, presented to council the following:
Chicago, III., Dec. 13, 1888.
The Thompson-Huston Company hereby assign and set over to B. P. Foster, of Findlay, Ohio, all the right, title and interest of the Thompson-Huston 'Company to the franchise, ordinance and city contract passed by the Council of the City of Findlay, on July 9, 1888; provided, also, that B. P. Foster, or his assigns, assume all liability of the Thompson-Huston Co. involved by the acceptance of said franchise, ordinance and contract.
The Ti-iompson-Huston Electric Co.,
By S. A. Barther, Gen. Mg’r.
The council ordered the assignment, by a motion duly made, to be recorded.
By the terms of the contract, the city is compelled to furnish the Electric Light Company gas for fuel to the extent of supplying the fuel necessary for 100 arc lights at a cost not to exceed the price charged for natural gas by the city on July 10, 1888, the date of acceptance of the contract ordinance by the Electric Light Company, and for each arc light furnished the city, in excess of said 100 arc lights, the cost of gas fuel shall proportionately increase. To illustrate: Suppose the necessary gas fuel to run 100 arc lights at this date, the city charged $200.00 per year, and to-day the Electric Light Company was furnishing 126 arc lights, the city should charge $252.00 per year for the 126 arc lights. The question then necessarily arises, what was charged for natural gas by the city on July 10,1888? The evidence submitted is entirely silent.
*466 Upon January 4, 1889, the Gas Trustees adopted a resolution to the effect that the Electric Light Company should be charged $30.00 per month for all gas consumed, which rate was paid by the company for several months.
Upon March 4, 1889, the Gas Trustees adopted another resolution to the effect that the Electric Light Company should be charged $25.00 per month for all gas consumed ; which was paid by the company for several months. Upon July 10, 1889, the Gas Trustees adopted still another resolution, to the effect that the Electric Light Company should be charged $20.00 per month for all gas consumed ; which rate was paid by the company for several months.
These rates embraced pay for all the gas consumed by the Electric Light Company, including the gas consumed by virtue of the contract with the city for fuel for the arc lights as well as the gas consumed for furnishing incandescent lights, and arc lights for private persons. In face of the evidence presented to us, that the gas consumed by the Electric Light Company has inci'eased one-third over what the consumption was at the start, we have the singular and startling fact that a Board of Gas Trustees of this city, elected by the people to look after the welfare of the city, to protect the city’s interest, adopting a course of procedure that the more gas consumed by this Electric Light Company, the less money the company is required to pay. This is wrong, radically wrong, and if persisted in, means bankruptcy.
From the evidence presented to us, we cannot find that this action of the Board of Gas Trustees was by virtue of any rules or regulations provided by any ordinance duly passed by the city council.
Section 2489 of the Revised Statutes provides, among other things:
“ That the Board of Gas Trustees shall make monthly reports to the council of the receipts and disbursements of money belonging to the gas-works, and annual report of the condition of the same, and all money collected for gas-works purposes *467 shall be deposited weekly by the collector thereof with the treasurer of the corporation, and one of the receipts thereof shall be deposited with the clerk of such board.”
So that, by these monthly and annual reports furnished council by the Board of Gas Trustees, council was put in possession of the amount that the Board of Gas Trustees was exacting from the Electric Light Company for fuel gas furnished, and by adopting these reports, it confirmed, ratified and approved the action of the Board of Gas Trustees under rules and regulations provided by an ordinance of the city council. So that, in December, 1890, when the attempted raise was made, so far as the record and the evidence in this case disclose, we find the Electric Light Company paying $20.00 per month for all the gas consumed by it, and this from what we have noticed, we are bound to presume was established legally, by virtue of the contract with the city and section 2489 of the Revised Statutes.
The raise of the price of gas, in December, 1890, was the act of the Board of Gas Trustees alone. Was it made under the rules and regulations adopted by council?. We would be bound to presume it was, if nothing appeared to the contrary. This raise was not approved and ratified by council by filing monthly and annual reports of the Board of Gas Trustees with council, for the reason that these reports would not contain •‘the payment by the Electric Light Company of the raised price; for it is admitted the raised price has never been paid. Again, we are confronted with another startling fact, that another board of the city, to-wit: the City Council, who are equally interested in looking after the welfare and protecting the interest of the city as the Board of Gas Trustees, protesting against the new Board of Gas Trustees establishing the new rate, while at the same time approving the action of a former Board of Gas Trustees, in lessening the price-as the consumption of gas increased.
On December 1, 1890, the city council adopted the following resolution: “ That the Electric Light Committee be in *468 structed to confer with the Gas Trustees and the Electric Light Company.”
On December 8,1890, this committee made the following report to council:

To The City Gowieil:

Gentlemen : — The Committee on Electric Lights, to whom was referred the matter of consulting with the Gas Trustees with a view of adjusting the price to be charged the Electric Light and Power Company for gas, would respectfully report that they have considered the same and consulted with the Gas Trustees, at their regular meeting held on Wednesday evening, the 3rd inst. Said Gas Trustees refuse to make any reduction in the rate fixed to said company. We therefore recommend that the ordinance be so amended as to allow said company to charge $5.6(1 per month for city lighting, and $6.50 per month for commercial lighting, the said company to furnish light for mayor’s office, council chamber and clerk’s office free of charge, and that the city solicitor be instructed to draft an ordinance in accordance therewith.”
Which report was adopted by the city council.
From these proceedings of council, is established the fact that the price of gas was raised in December, 1890, by the Board of Gas Trustees alone, not under and by virtue of any rules or regulations of the city council prescribed by ordinance, but rather against the direct protest of the city council. This the Board of Gas Trustees had no authority or power to do, and their action is void, as we held in the case of Bellaire Goblet Works. The Board of Gas Trustees of the City of Findlay are governed by section 2489 of the Revised Statutes, which provides :
“ That the Board of Gas Trustees may prescribe by by-laws the price of gas and coke, under such rules and regulations' as by ordinance the council may prescribe, and the manner of using gas. ”
With these views, what should be done in the premises ?
Burhet & Burhet and J. A. Bope, for plaintiff.
W. F. Duncan, City Solicitor, and Geo. F. Pendleton, for defendants.
The city council should, by ordinance or resolution, declare what the Electric Light Company should pay for the gas fuel used in furnishing arc lights to the city, by virtue of its contract, and this should be based upon the price of natural gas as it was on or about July 10, 1888. As to the gas fuel used in furnishing incandescent lights or arc lights to private persons, the city council should adopt such rules and regulations and the manner of using gas, by ordinance, as to the council shall appear to the best interest of all, subject to the limitation that the rules and regulations and manner of using gas shall be uniform, applying alike to all the inhabitants of the city, under similar conditions. Following these rules and regulations and manner of using gas thus adopted, the Board of Gas Trustees should prescribe the price of gas by by-laws subject to the limitation that the price shall be uniform to all the inhabitants under similar conditions.
When these respective ordinances and by-laws are adopted, the city can enforce the price of gas thus regulated against the Electric Light Company. Until that time arrives, the price of gas, as fixed by the Gas Trustees, to-wit, $20.00 per month, and approved and ratified by the city council, is the only price the Electric Light Company can be called upon to pay.
Entertaining these view's, the defendants, the City of Findlay and Board of Gas Trustees, will be perpetually enjoined from cutting off the gas that furnished the fuel for the plaintiffs electric light plant up to and including the date that another price is established by the joint act of the city council and the Board of Gas Trustees, upon the payment by the plaintiff of $20.00 per month for said time.
Defendants will pay all costs for which execution is awarded, and cause remanded for execution.
Beer and Moore, JJ., concur.

See ante, p. 417.